Eastern District of Kentucky
FILED
DEC 6 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 06-60-GWU

TAMMIE L. SHELLEY,                              PLAINTIFF,

VS.                **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff originally brought Shelley v. Barnhart, London Civil Action No. 02-436-GWU (E.D. Ky.) to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). After a period of administrative reconsideration granted by the undersigned at the request of the defendant, the case has been redocketed under the above civil action number and is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

1

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of

Shelley

fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

Shelley

symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2

5

Shelley

and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

6

Shelley

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Tammie L. Shelley, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease, insulin-dependent diabetes mellitus, chronic urinary incontinence and hematuria, fibromyalgia, hypertension, obesity, and depression. (Tr. 303). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Shelley retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 306-9). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "medium" level exertion, and also had the following non-exertional

7

impairments. (Tr. 337). She: (1) could only occasionally climb, bend, crouch, or crawl; (2) had a "seriously limited but not precluded" ability to deal with the public, deal with work stresses, and understand, remember, and carry out complex instructions; and (3) would have at least a "limited but satisfactory" ability to make other occupational, performance, and personal/social adjustments. (Tr. 337-8). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 338). In the alternative, the ALJ asked whether there would be jobs for the same individual if the exertional level were reduced to "light" and the person also required a sit/stand option every 30 minutes, with the other physical and psychological restrictions of the first hypothetical remaining the same. (Id.). The VE testified that there were several jobs which would be available, totaling over 6000 positions in Kentucky and 375,000 positions in the national economy. (Tr. 338-9).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff filed her SSI application in December, 1999, and it was denied administratively (Tr. 12-23), but after an appeal to this Court it was remanded for further consideration at the request of the Commissioner (Tr. 351-2). <u>Shelley v.</u>

8

Shelley

Barnhart, London Civil Action No. 02-436-GWU (E.D. Ky. June 30, 2003).[1] Therefore, the period at issue runs from December, 1999 to May 2, 2005 the date of the most recent ALJ decision. (Tr. 297-309).

Although the medical evidence shows that the plaintiff was given extensive workups for complaints of back pain, MRI scans showed primarily degenerative disease which was not considered a condition which could be remedied with surgery. (Tr. 125-6, 392, 461). A specialist in pain management, Dr. Howard Lynd, submitted office notes showing that he treated Mrs. Shelley between July, 2001 and July, 2004 with a variety of pain medications and epidural steroid injections, but he did not list any functional restrictions (Tr. 376-414).[2] Mrs. Shelley's treating family physician, Dr. James David Wilson, after noting in July, 1999, that she was complaining of back tenderness "somewhat out of proportion to her objective findings" (Tr. 206), made referrals to various specialists for further evaluation but also did not list any specific functional restrictions. He did make a conclusory comment on November 16, 1999, shortly before the plaintiff's SSI application, that she was "considering applying for disability which she should qualify for... with her back and her anxiety disorder." (Tr.

---

[1] The remand was requested because an examining psychologist relied upon by the ALJ in the 2001 decision was unlicensed. (Tr. 344-5).

[2] He referred his patient to a Dr. Rodrigues for evaluation of possible sleep apnea, which was diagnosed and treated with a CPAP machine, reportedly with good results. (Tr. 379, 386).

9

200). Other problems treated by Dr. Wilson included diabetes, which was treated initially with oral medications and finally with insulin (Tr. 272, 274, 511), urinary incontinence (e.g. Tr. 195), hypertension, high cholesterol, and anemia. (Tr. 511-12).

The only physical restrictions from examiners came through one-time examining physicians Dr. Martin Fritzhand and Dr. Tony Mancuso. Dr. Fritzhand examined the plaintiff on April 4, 2001, and also reviewed previous records, including a lumbosacral spine MRI. (Tr. 276). He noted that the plaintiff appeared depressed and was "quite tremulous," and ambulated with an exceedingly slow but non-limping gait. (Tr. 277). She was obese, weighing 221 pounds a height of five feet five inches, and had difficulty bending forward to 50 degrees at the waist and some difficulty standing on either leg. (Tr. 276-7). There were no motor or sensory deficits, but her left Achilles reflex was only "trace." (Tr. 277). Dr. Fritzhand diagnosed exogenous obesity, degenerative joint disease of the lumbar spine, and Type II diabetes mellitus. (Tr. 278). He stated that he could not rule out nerve root damage since the deep tendon reflexes were depressed, and this might represent early diabetic peripheral neuropathy. (Id.). He added that obesity contributed to the plaintiff's symptoms and weight reduction would diminish her complaints. In terms of specific functional restrictions, Dr. Fritzhand opined that Mrs. Shelley could perform medium level exertion, and could stand and walk 30 minutes continuously,

10

but he did was uncertain how many total hours she could stand and walk in an eight-hour day. She could sit 4-5 hours in an eight-hour day (45-60 minutes continuously), and could occasionally bend and squat, but he was also uncertain whether she was able to crawl, climb, or use her feet for repetitive movements as in operating foot controls. (Tr. 281). He added that the plaintiff had "profound subjective complaints with minimal objective findings." (Id.).

Dr. Mancuso examined the plaintiff on January 16, 2005, and also reviewed a limited number of prior records from Dr. Wilson, as well as Dr. Fritzhand's report. (Tr. 505). Mrs. Shelley reported that she had fallen 11 days earlier and had a fractured tailbone and two ribs. (Tr. 500). Otherwise, she reported that her low back pain required her to use a Duragesic patch and a cane for stability, that she was a insulin-dependent diabetic with numbness in both feet and toes, had a continuing problem with urinary incontinence, and slept 12 to 16 hours a night, partly due to her medication. (Tr. 500-1). Dr. Mancuso also noted an extremely slow, non-antalgic gait, and decreased sensation in the right leg and both feet, although he found reflexes to be symmetrical. (Tr. 502). Forward flexion was limited to 30 degrees, and there was no detectable muscle spasm in the back and no impairment in toe and heel walking. He concluded that there was "minimal" evidence for physical restrictions (Tr. 503), and completed a functional capacity form limiting the plaintiff to "medium" level exertion, sitting a total of 4-6 hours in an eight-hour day (no more

11

than 1-2 hours without interruption), standing and walking for less than 30 minutes without interruption, for an unknown number of hours in an eight-hour day, occasionally bending, squatting, crawling, and climbing, and frequently reaching above shoulder level. (Tr. 504).[3]

Since the plaintiff failed to produce any evidence of specific restrictions from treating sources, the ALJ could reasonably have relied upon the opinion of Doctor Mancuso, the most recent consultant. While the ALJ's specific functional capacity finding, which was consistent with the first hypothetical question described, supra, is less restrictive than found by Dr. Mancuso, the second hypothetical question is consistent. Therefore, any error was harmless. Dr. Wilson's statement in November 1999 that the plaintiff should qualify for "disability" due to her back problems and anxiety was not only conclusory but vague, and was also given before any of the MRIs were obtained. Therefore, it need not have been given controlling weight.

From a psychological standpoint, although Dr. Wilson and Dr. Lynd prescribed various antidepressant medications, they did not list specific mental restrictions, and apparently did not refer the plaintiff for psychological treatment. The only opinion

---

[3]The ALJ interpreted Dr. Mancuso's RFC form as showing that the claimant could stand and walk "3 hours each with rests." (Tr. 305). While it appears to the Court that Dr. Mancuso wrote "?" rather than "3," his handwriting is not entirely clear in this instance, and the plaintiff has not raised the issue on appeal. In any case, assuming that Dr. Mancuso did write "?," this would not establish that the plaintiff was limited to a greater degree than found in the second hypothetical question.

Shelley

from a qualified psychological source was given by Dr. Gary Maryman, who examined the plaintiff on December 9, 2004 and noted a depressed mood, but that the plaintiff was in no acute emotional distress, related "pretty well," and had "pretty good" focus and concentration. (Tr. 490). Intelligence testing showed a full-scale IQ score of 90 and a high school reading ability. (Tr. 492). Dr. Maryman did diagnose a "severe" episode of major depression without psychotic features, but concluded that Mrs. Shelley would have a "limited or satisfactory" or better ability to make most occupational, performance, or personal/social adjustments, except for a "seriously limited but not precluded" ability to deal with the public, deal with work stresses, and understand, remember, and carry out complex job instructions. (Tr. 495-6). Since these factors were given to the VE, the portion of the decision dealing with the plaintiff's mental functioning is also supported by substantial evidence.

On appeal, the plaintiff argues that the ALJ improperly used the Commissioner's Medical-Vocational Guidelines to determine that she could perform substantial gainful activity, but this argument is incorrect, since a VE was employed. Alternatively, the plaintiff argues that the hypothetical question did not properly reflect her complaints of unremitting, severe pain. However, the ALJ reasonably found that the plaintiff did not have sufficient objective findings to support her subjective complaints of disability. (Tr. 305-6). <u>Duncan v. Secretary of Health and Human Services,</u> 801 F.2d 847, 853 (6th Cir. 1986). Finally, the plaintiff argues that

13

Shelley

Human Services, 801 F.2d 847, 853 (6th Cir. 1986). Finally, the plaintiff argues that the ALJ did not consider her impairments in combination, but the ALJ's discussion was adequate in this regard. (Tr. 303). Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).

The decision will be affirmed.

This the ___6___ day of December, 2006.

*signature*

G. WIX UNTHANK
SENIOR JUDGE

14